NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| VILMA HERNANDEZ,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civil Action No. 17-4426 (SDW)<br><br>**OPINION**<br><br>January 29, 2019 |

**WIGENTON,** District Judge.

Before this Court is Plaintiff Vilma Hernandez's ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"). Specifically, Plaintiff appeals Administrative Law Judge Michael Calabro's ("ALJ Calabro") denial of Plaintiff's claim for a period of disability and disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78.[1] This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons set forth below, this Court finds that ALJ Calabro's factual findings are supported by substantial credible evidence and that his legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

---

[1] This Court considers any arguments not presented by the parties to be waived. *See Brenner v. Local 514, United Bhd. of Carpenters & Joiners*, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

1

I.   **PROCEDURAL AND FACTUAL HISTORY**

   A. **Procedural History**

On August 21, 2013, Plaintiff filed an application for a period of disability and disability insurance benefits. (Administrative Record [hereinafter Tr.][2] 235-41.) Plaintiff also filed an application for supplemental security income on September 20, 2013.[3] (Tr. 242-49.) Both claims were denied initially on November 27, 2013, and again on reconsideration on January 2, 2014. (Tr. 135-41, 146-51.) Plaintiff then filed a written request for a hearing on October 22, 2015. (Tr. 157-59.) On October 22, 2015, Plaintiff appeared and testified at an administrative hearing before ALJ Calabro in Orlando, Florida. (Tr. 56-75.) An impartial vocational expert, Joyce P. Ryan ("VE Ryan"), also testified.[4] (Tr. 75-79.) Subsequently, ALJ Calabro concluded that Plaintiff was not disabled under §§ 216(i), 223(d), and 1614(a)(3)(A) of the Act from the alleged onset date of June 13, 2013 through June 2, 2016, the date of his decision. (Tr. 48.) Thus, ALJ Calabro issued an opinion affirming the denial of benefits. (Tr. 36-48.) On April 26, 2017, the Social Security Appeals Council denied Plaintiff's request for review. (Tr. 10-13.) This appeal followed. (ECF No. 1).

   B. **Factual History**

     **1. Personal and Employment History**

Plaintiff was forty-seven years old at the alleged onset of her disability on June 13, 2013. (Tr. 235.) Plaintiff dropped out of school in the seventh grade, and later earned her GED and a certificate in business administration. (Tr. 60.) At the time of the administrative hearing,

---

[2] The Administrative Record which uses continuous pagination can be found at ECF No. 7.
[3] This Court notes that there is a non-dispositive discrepancy with the filing dates cited by the ALJ in his decision and those indicated in Plaintiff's applications for disability insurance and supplemental security income. (Tr. 36.)
[4] ALJ Calabro noted in his decision that the Plaintiff sent interrogatories to vocational expert David Pigue ("VE Pigue"), which were answered and submitted to the Plaintiff. (Tr. 369-372; 374.) VE Pigue did not appear at the hearing on October 22, 2015.

Plaintiff's most recent significant employment was as a waitress in 2013, and as an office assistant at a trucking company between 1998 and 2001. (Tr. 68, 76.) In her role as a waitress, Plaintiff frequently carried trays of food weighing less than ten pounds. (Tr. 290-91.) As a general office assistant, plaintiff performed primarily sedentary work, such as filling out paperwork, working on the computer, and copying. (Tr. 76.) Plaintiff has not performed paid work since 2013. (Tr. 69.)

### 2. Function Report and Medical History

On October 10, 2013, Plaintiff completed a function report indicating that she lives with her husband in an apartment, her daily activities include leaving the house once a day and riding in a car, and she grocery shops once per month, which takes her approximately three hours. Plaintiff also reported that since the onset of her alleged disability, she no longer manages her personal finances, she experiences problems with her memory and concentration, and has no motivation to do anything but sleep. (Tr. 298-99.) She also indicated that she could walk up to one mile before needing to stop. (Tr. 300.)

Plaintiff's medical records demonstrate that between 2010 to 2015, she consulted with, and was treated and examined by, numerous medical practitioners for the physical and mental symptoms associated with her disability claim. (Tr. 379-469, 471, 477, 480, 517-21, 527-38, 579-702.) On November 30, 2010, Plaintiff was treated for injuries sustained in a car accident, at which time she complained of dizziness and pain in her upper body. (Tr. 461.) The medical record reported no abnormal findings in CT scans of Plaintiff's chest, abdomen and spine. (Tr. 461-464.) In October 2012, Plaintiff was treated at The Reading Hospital for anxiety and depression induced by work-related stress. (Tr. 427-435.) Following a mental status examination, Plaintiff was diagnosed with major depressive disorder without psychotic features and anxiety disorder, and assigned a global assessment of function ("GAF") score of 35. (Tr. 427-28.)

3

On June 5, 2013, Plaintiff was involuntarily admitted to the psychiatric unit at The Reading Hospital for psychosis and disorganization. (Tr. 380-81.) Plaintiff was discharged against medical advice at the request of family because they wanted her to return with them to Florida. (Tr. 381.) Plaintiff was also admitted to Lakeside Hospital in June 2013 for anxiety and suicidal thoughts. (Tr. 480.) Dr. Yousuf Bhaghani ("Dr. Bhaghani") examined Plaintiff and determined she had psychotic disorder and anxiety disorder, but did not have schizoaffective disorder. (Tr. 477.) Dr. Bhaghani also assigned Plaintiff a GAF score of 30. (Id.) Following an eleven-day stay, Plaintiff was discharged with a GAF score of 65. (Tr. 471.) Thereafter, Plaintiff made six visits to Winter Haven Hospital from July 2013 to January 2014, primarily seeking refills of her psychiatric medication. (Tr. 41-42.)

On November 5, 2013, Dr. Danna Costa ("Dr. Costa") conducted a psychological consultative evaluation of Plaintiff. (Tr. 517-21.) Dr. Costa reported Plaintiff's symptoms were not consistent with schizophrenia as the "level of mental health symptoms would be best characterized as moderate-severe." (Tr. 519.) He also reported that, in June 2013, Plaintiff indicated that she had "acted strange[,]" but denied having hallucinations and delusions. (Tr. 521.) Dr. Costa assessed anxiety disorder and dysthymic disorder, and assigned a GAF score of 55. (*Id*.)

In June 2014, Dr. Maqsud Ahmed ("Dr. Ahmed") examined and treated Plaintiff for complaints of chest pain and shortness of breath. (Tr. 527-38.) The physical examination revealed Plaintiff was normal and her mental status showed normal judgment and a depressed demeanor. (Tr. 529.) Dr. Ahmed reported an impression of angina at rest and hypothyroidism, and that Plaintiff was morbidly obese and weighed over 300 pounds.[5] (Tr. 529, 534, 538.)

### 3. Hearing Testimony

---

[5] Plaintiff sought additional treatment for related symptoms and complaints at Winter Haven Hospital and Park Place Behavioral Health care between 2013 and 2015. (Tr. 579-702.)

ALJ Calabro held a hearing on October 22, 2015, during which Plaintiff testified to the following: she has been struggling with schizophrenia and manic depression, which affects her sleeping, concentration and memory (Tr. 63); she has visited the emergency room a couple of times seeking treatment for her mental health issues, and was seen by a counselor at Park Place between four and five times (Tr. 61); her medication regimen consists of Clonazepam, Mirtazapine, and Levothyroxine (Tr. 63); and that she quit smoking in 2014. (Tr. 65.) Plaintiff also testified that she experiences anxiety attacks and employs breathing and stretching exercises to control them. (Tr. 73.) With respect to physical limitations, Plaintiff testified that she cannot stand for too long, and she cannot walk more than a block. (Tr. 74.) She also stated that she can stand for twenty to thirty minutes before she has to sit down and elevate her leg. (Tr. 75.)

VE Ryan also testified at the hearing. ALJ Calabro presented VE Ryan with a hypothetical to gauge Plaintiffs work capabilities. (Tr. 77-79.) He asked if there were any jobs that an individual could perform with the following attributes: Plaintiff's age, education, and past job experience. (Tr. 77-78.) VE Ryan responded affirmatively and testified that Plaintiff could not perform her past relevant work (Tr. 78), but could perform other jobs in the national economy such as a small products assembler. (Tr. 78-79.) Moreover, VE Pigue provided additional occupations in his written interrogatories, which included positions of office helper, mail clerk and assembler.[6] (Tr. 369-72.)

## II. LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). However, this Court's review of

---

[6] VE Pigue confirmed that the occupational evidence that he provided does not conflict with the occupational information contained in the Dictionary of Occupational Titles. (Tr. 371-72.)

5

the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citation and quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Id.* (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 U.S. Dist. LEXIS 32110, at *7 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (internal quotation marks omitted)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). "[W]here there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ." 42 U.S.C. § 423(d)(5)(A).

### B. The Five-Step Disability Test

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in §§ 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality

or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rules ("SSR") 85-28, 96-3p, 96-4p.[7] An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the "Listing of Impairments" in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC") using a two-step process.[8] 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). A claimant's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§

---

[7] On June 14, 2018, the Social Security Administration ("SSA") rescinded SSRs 96-3p and 96-4p because the rulings were considered "unnecessarily duplicative" of SSR 16-3p. Social Security Rulings (SSRs) 96-3p and 96-4p; Rescission of SSRS 96-3p and 96-4p, 83 Fed. Reg. 27816-01 (June 14, 2018). The rescissions do not substantively change the SSA's policies and do not affect this Court's analysis.
[8] First, the ALJ determines "whether there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the claimant's pain or other symptoms." (Tr. 16.) Second, the ALJ "evaluate[s] the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning." (*Id.*)

404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, the burden shifts to the ALJ at step five to determine whether the claimant is capable of performing an alternative SGA present in the national economy. 20 C.F.R. §§ 404.1520(g)(1) (citing 404.1560(c)), 416.920(g)(1) (citing 416.960(c)); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). At this point in the analysis, the SSA is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. DISCUSSION

Plaintiff argues that the Commissioner's final decision is not supported by the substantial evidence in the record, and requests that this Court remand that decision and order a new hearing. (ECF No. 12.) As explained below, ALJ Calabro properly applied the five-step disability test

9

before determining that Plaintiff was not disabled. ALJ Calabro's findings are supported by substantial credible evidence and there is no basis for remand or reversal because ALJ Calabro appropriately considered all of Plaintiff's medically-supported complaints.

At step one of the five-step test, ALJ Calabro determined that Plaintiff has not engaged in substantial gainful activity since June 13, 2013, the amended alleged onset date of her disability. (Tr. 39); 20 C.F.R. §§ 404.1571 *et seq.* and 416.971 *et seq.* At step two, ALJ Calabro found that Plaintiff's history of major depressive disorder, anxiety, bipolar disorder, degenerative joint disease of the left knee, and obesity are severe medically determinable impairments. (Tr. 39); 20 C.F.R. §§ 404.1520(c) and 416.920(c).

At step three, ALJ Calabro found that Plaintiff does not have an impairment that meets the severity of one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"), and supported his conclusions with substantial evidence. (Tr. 39-40); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926. Specifically, Plaintiff's impairments were compared with those in Listings §§ 12.04 and 12.06.[9] (Tr. 39-40.) In considering §§ 12.04 and 12.06, ALJ Calabro evaluated Plaintiff's mental impairments by assessing the following functional criteria listed in "paragraph B": marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. (*Id.*) Accordingly, he noted mild to moderate difficulties for the above-criteria, but found no evidence that Plaintiff was completely unable to function outside the home; nor did he find that Plaintiff experienced episodes of decompensation for an extended duration. (Tr. 39.) ALJ Calabro recognized that the evidence in the record demonstrates that Plaintiff is "able to

---

[9] Section 12.04 addresses depressive, bipolar and related disorders, and § 12.06 addresses anxiety and obsessive-compulsive disorders.

engage in daily living" as she is able to go grocery shopping, watch television and read. (*Id*.) ALJ Calabro concluded that Plaintiff did not meet the criteria in "paragraph B."

ALJ Calabro went on to consider whether Plaintiff satisfied "paragraph C," and similarly found that Plaintiff did not meet those requirements because her mental impairments have not: 1) "resulted in repeated episodes of decompensation[;] or 2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate[;]" or 3) imposed a limitation on function "outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." (Tr. 40.) Thus, ALJ Calabro properly found that Plaintiff does not have an impairment that meets or medically equals one of the Listings as his findings were supported by the medical records.

At step four, ALJ Calabro followed the proper two-step process to determine Plaintiff's residual functional capacity ("RFC").[10] (Tr. 40-41); 20 C.F.R. §§ 404404.1529, 404.1567(b), 416.929, 416.967(b); SSR 96-4p.[11] At the first step, ALJ Calabro concluded that Plaintiff's "medically determinable impairments could reasonably be expected to" produce the Plaintiff's symptoms. (Tr. 45.) However, at the second step, he found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record[.]" (*Id*.) With respect to Plaintiff's alleged mental impairments, ALJ Calabro largely deferred to the state agency consultants who had an

---

[10] First, the ALJ determines "whether there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the claimant's pain or other symptoms." (Tr. 40.) Second, the ALJ "evaluate[s] the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning." (*Id*.)

[11] On June 14, 2018, the SSA released a notice concerning SSR 96-4p. SOCIAL SECURITY ADMINISTRATION NOTICE OF RESCISSION OF SSRs (2018), https://www.federalregister.gov/documents/2018/06/14/2018-12820/social-security-rulings-ssrs-96-3p-and-96-4p-rescission-of-ssrs-96-3p-and-96-4p. The notice explained that under SSR 96-4p, "no symptom, by itself, could establish the existence of a medically determinable physical or mental impairment." (*Id*.) Notably, the notice advised that SSA was rescinding SSR 96-4p as it "duplicates policy in SSR 16-3p." (*Id*.)

11

opportunity to review the clinical findings. (Tr. 46, 118-129.) He noted that Plaintiff "was not limited in her ability to understand, remember [or] carry out very short and simple instructions." (Tr. 46.) In fact, he emphasized that after Plaintiff started treatment at Park Place in March 2014, "she was doing better." (*Id.*) ALJ Calabro stated that "[w]hen [Plaintiff] is compliant with treatment and medications, the evidence clearly shows improvement in her mental status." (*Id.*)

After carefully considering the entire record, ALJ Calabro found that Plaintiff had the RFC

> to perform light work, as defined in 20 CFR 404.1567(b) and 416.967(b), except she can never climb ladders, ropes or scaffolds. She can occasionally crawl and kneel. The claimant is limited to simple repetitive 1-2 step tasks with frequent interaction with the public. She can tolerate occasional changes in the work setting.

(Tr. 40.) Given Plaintiff's RFC, ALJ Calabro determined at step four that Plaintiff is unable to perform any past relevant work. (Tr. 47.) In reaching his decision, he also relied on VE Ryan's testimony (Tr. 46-47) and VE Pigue's supplemental interrogatories. (Tr. 369-72.)

At step five, ALJ Calabro again properly considered VE Ryan's testimony and VE Pigue's supplemental interrogatories in determining that Plaintiff can perform three jobs that exist in significant numbers in the national economy: mail clerk, assembler and office helper. (Tr. 48); 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a). After properly following the five-step disability test, ALJ Calabro determined that Plaintiff is not disabled under the Act.

This Court is required to give deference to the ALJ's findings if it is supported by substantial evidence in the record. *See Scott v. Astrue*, 297 F. App'x 126, 128 (3d Cir. 2008). ALJ Calabro's determination that Plaintiff was not disabled under the Act from June 13, 2013 through June 2, 2016, the date of his decision, is supported by substantial credible evidence in the record.

**IV. CONCLUSION**

Because this Court finds that ALJ Calabro's factual findings were supported by substantial credible evidence in the record and his legal conclusions were correct, the Commissioner's decision is **AFFIRMED**.

*s/ Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc: Parties